## Glass, et al. v. Bradford.

(Decided June 19, 1914.)

### Appeal from Scott Circuit Court.

1. Trusts—Constructive Trusts.—Where one who managed the business affairs of his wife and her mother, loaned money belonging to them and took therefor notes made payable to himself, which fact was discovered after his death, equity will raise a constructive trust and restore the notes to those to whom they rightfully belong.

2. Reformation of Instruments—Right of Action and Defenses—Mistake.—Where in satisfaction of notes secured by mortgage, the mortgagor conveys the property, making the deed to the widow of the mortgagee, to their only child, a daughter, and to her husband, the husband attending to the details of the transaction and the women being in ignorance of the fact that the name of the husband was included as a joint grantee, equity will reform the instrument upon proper showing of mistake in respect of the inclusion of the husband's name therein.

BRADLEY & BRADLEY and B. M. LEE for appellant.

J. T. ASKEW, J. C. B. SEBREE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Mrs. Jane Bradford is the widow of B. M. Bradford, who died a resident of Stamping Ground, intestate, and leaving an estate consisting of both real and personal property.

The Bradfords had only one child, a daughter, who married W. G. Glass. This daughter and her husband

lived with the parents of the wife until the death of Bradford in 1878, after which they continued to reside with the wife's mother.

Glass and his wife had only one child, a daughter, who married J. G. Blanton. The Blantons lived with Mrs. Bradford and the wife's parents until Mrs. Blanton died, childless, after which Blanton continued to live with the family of his deceased wife until his own death.

After the death of Bradford, Glass attended to all the business of his wife and her mother, no administrator having been appointed of the Bradford estate, and no division ever having been made between the mother and daughter, except perhaps a verbal agreement between the two that the house where they lived should be the mother's and a farm the daughter's. Glass continued to manage all matters pertaining to the estate and the property of his wife and her mother until his own death.

It appears that at the time of his death, Bradford was the owner of some lands in Texas. In 1901 or 1902, Mrs. Bradford and Mrs. Glass sold these lands for three thousand five hundred dollars. This money Glass handled as the agent of his wife and her mother. Of this sum, at the request of Mrs. Glass and her mother, twelve hundred dollars was expended for medical services for Mrs. Blanton; five hundred dollars was loaned to the firm of Glass & Yates, and a note taken therefor payable to Mrs. Glass; and the remaining eighteen hundred dollars was loaned to Glass & Yates (the Glass of the firm being a nephew of W. G. Glass) and the notes therefor, seemingly without the knowledge of Mrs. Glass or Mrs. Bradford, were taken payable to Glass himself.

Upon the death of Glass, these notes for eighteen hundred dollars were found among his effects. His wife was administratrix of his estate; and she and Mrs. Bradford objected to the appraisers making an appraisement of these notes as part of Glass' estate, notwithstanding which objection the appraisers included them in their report. Whereupon Mrs. Glass moved the court to strike these notes from the report of the appraisement upon the ground that they were in point of fact the property of herself and her mother and not of the estate of her husband.

Pending her administration of the estate of her husband and the controversy in respect of these notes, she herself died, F. W. Thomasson becoming administrator

*de bonis non* of the estate of W. G. Glass, and Mrs. Bradford becoming administratrix of the estate of her daughter.

Thomasson, administrator, instituted an action in the Scott Circuit Court to settle the estate of W. G. Glass, the only question in which so far as it affects this appeal, being whether the notes mentioned were the property of W. G. Glass' estate or Mrs. Bradford.

It further appears that at the time of his death Bradford was the owner of notes aggregating something over two thousand dollars, signed by one McMillin and secured by mortgage on some real estate in or near Stamping Ground.

McMillin voluntarily surrendered this property to Mrs. Bradford and Mrs. Glass in satisfaction of said notes, this being the consideration, as is shown by recital in the deed of conveyance.

This deed was made to ''Jane Bradford, widow of B. M. Bradford, Mary Glass, a child of said Bradford, deceased, and W. G. Glass, husband of Mary Glass.'' Its date was May 13, 1878. The details of this transaction were handled by Glass himself, acting for his wife and her mother, and there is no evidence indicating that Mrs. Glass or Mrs. Bradford at any time before the death of Glass, knew that his name was mentioned in the deed.

After the death of Glass, his heirs instituted an action in the Scott Circuit Court for the sale and division of the proceeds of sale of this property, which is indivisible, claiming an undivided one-third interest therein. This action Mrs. Bradford defended, asserting that the name of W. G. Glass was inserted in the deed without her knowledge or the knowledge of her daughter; that same was done through fraud or mistake; that the consideration of said conveyance was the money owing by McMillin to the estate of B. M. Bradford; and, claiming ownership of the whole of said property in her own right and as heir-at-law of her daughter, Mrs. Glass.

The two cases mentioned were consolidated in the circuit court and upon submission, the chancellor held that the two notes amounting to eighteen hundred dollars were the property of Mrs. Bradford, and that she was also the owner of the whole of the real estate sought to be partitioned by sale; and a judgment was entered to that effect. From that judgment this appeal is prosecuted by the heirs of W. G. Glass and the administrator of his estate.

1. The questions presented are purely questions of fact. It was shown by a number of witnesses that Glass stated on all occasions when he spoke concerning the notes heretofore mentioned, that the money loaned to Glass & Yates was the property of his wife and her mother and that the notes were theirs; that he stated to the assessors when listing his property that these notes were the property of the women, and that he owned no notes. It was also shown that he paid them from time to time the interest received thereon from the parties to whom the money was loaned.

The cashier of the bank in which the thirty-five hundred dollars was deposited by Glass testified that same was received for the Texas lands; that on more than one occasion Glass told him that this money which was loaned to Glass & Yates belonged to Mrs. Bradford and Mrs. Glass; that the interest on these notes, paid from time to time, was paid in checks, and that Glass would cash these checks as they came in and always take this money to Mrs. Bradford and Mrs. Glass. That the money so loaned belonged to the women, there can be no doubt, and this fact in connection with the declarations made by Glass himself as to the ownership of the notes was sufficient to establish Mrs. Bradford's claim thereto.

2. As to the land sought to be sold, the deed itself shows that the consideration therefor was the money owing by McMillin to the Bradford estate. In addition, it was shown by about twenty witnesses that Glass on all occasions when the subject was under discussion, disclaimed ownership of the McMillin property, and asserted that it was the property of his wife or his wife and her mother. He consulted with and followed their directions with reference to repairs thereon, paid to them the rents, and at all times in their presence recognized this land as their property.

The evidence of a universal disclaimer of ownership or interest in the land together with the fact that Glass paid none of the consideration, is sufficient to warrant the inference that the name of Glass was placed in the deed as joint grantee by mistake.

Upon a consideration of the whole case, we believe the finding of the chancellor was right.

The judgment is, therefore, affirmed.